UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   For Online Publication Only
HECTOR JOSE,

                Plaintiff,

                                    **MEMORANDUM & ORDER**
   -against-                             19-CV-7197 (JMA) (SIL)

STOLER OF WESTBURY,
d/b/a WESTBURY TOYOTA,

                Defendant.
------------------------------------------------------------------------X

**APPEARANCES:**

Steven J. Moser
Moser Law Firm, P.C.
3 School Street - Suite 207B
Glen Cove, New York 11542
   *Attorney for Plaintiff*

Glenn A. Kaminska
Ahmuty Demers & McManus
199 Water Street - 16th Floor
New York, New York 10038
   *Attorney for Defendant*

FILED
CLERK
1/19/2021 1:29 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

      Defendant Stoler of Westbury, d/b/a Westbury Toyota ("Defendant") moves to dismiss the complaint of plaintiff Hector Jose ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court **DENIES** Defendant's motion.

### I.   BACKGROUND[1]

      Defendant is a car dealer that employed Plaintiff as a maintenance worker for nearly seventeen years. On February 8, 2018, Plaintiff was injured on the job when he fell from a ladder.

---

[1]   The Court takes the factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.2008).

Plaintiff alleges that he suffered from a visible limp in his left leg and pain in his left arm from the fall. (ECF No. 1 at 3.) He was diagnosed with a limited range of motion of the cervical spine and sciatica and told he might need shoulder surgery. (Id. at 4.)

Four months later, Plaintiff brought a personal injury action in Supreme Court, Nassau County. (ECF No. 11 at 4.) The parties ultimately settled the action on March 14, 2019 and executed a General Release. The General Release provided that Plaintiff agreed to release:

> Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., Stoler Westbury Realty, LLC, Len Stoler Automotive, Len Stoler, Inc., and any and all directors, officers, shareholders, employers, insurers, partners, co-workers, assignees, agents, successors, subsidiaries, parents, or employees of the above named entity, together with their liability insurance carrier, IAT Insurance Group, Harco National Insurance Company, and their Subsidiaries. . .

(ECF No. 11-2 at 1.)

The General Release defined these listed parties as "Releasees." (Id.) In addition, Plaintiff agreed to release certain specific claims. The General Release provided that he would release claims:

> for compensation for any and <u>all injuries [Plaintiff], has sustained, known, unknown or unknowable which were allegedly cause[d] by the Release herein</u>. It is in full compensation for any and <u>all such personal injuries</u> which have manifest themselves up to the present time or may manifest themselves in the future, including physical pain and suffering, mental suffering, psychological injuries, emotional distress, loss of consortium, services or society, loss of wages now or in the future, <u>any and all derivative claims of any nature</u>, and for any development, whether foreseen or unforeseen, which may relate to the life, death or life expectancy of Releasor, including, but not limited to, any and all potential damages which could possibly be recovered pursuant to any legal authority that, absent this Release, might permit the Releasor or any other person authorized by law to make such a claim or claims. . .
>
> This Release also specifically covers any present or future lawsuit <u>relating to the incident that occurred on or about February 8, 2018</u>, for any injuries allegedly suffered as a result of that incident, <u>and for any other incident involving [Plaintiff], and the Releasees herein</u>. This Release also specifically Releases the Releasees for any and all claims relating [Plaintiff], and the Releasees herein; for the pain and suffering of the Releasor; <u>for any and all derivative claims of any nature</u>; and for any other

2

> claimed economic damages which were alleged, or could have been alleged, against the Releasees herein. Even if additional facts become known which were not known at the time this Release was executed, I waive my rights to bring a lawsuit against the above named Releasees.

(Id. (emphasis added).)

After the accident, but before he filed the personal injury action, Plaintiff was terminated on March 16, 2018. Though he was told that he was being terminated for washing his personal vehicle during work hours, Plaintiff believed he was terminated because of the injuries he sustained in the February 8, 2018 accident. (ECF No. 1 at 5.) Accordingly, Plaintiff brought a claim before the U.S. Equal Employment Opportunity Commission ("EEOC") on January 10, 2019 alleging that he was terminated on the basis of disability. (ECF No. 11-3.)[2] Several months later, he brought the instant litigation, in which he claims that Defendant engaged in disability discrimination under the Americans with Disabilities Act and New York State Human Rights Law for failure to accommodate and discriminatory termination. (Id.)

## II.  LEGAL STANDARD

Defendant moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that the terms of the General Release preclude Plaintiff from bringing this litigation.

### A. Standard of Review

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

---

[2] Plaintiff's EEOC claim was dismissed pursuant to a Dismissal and Notice of Rights on January 8, 2020. (ECF No. 11-4.)

3

U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 556. When reviewing a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

### B. The General Release

The entire basis of Defendant's motion to dismiss is that the General Release Plaintiff signed in the personal injury action bars him from bringing this lawsuit. In response, Plaintiff disputes the effect of the release for two reasons. First, Plaintiff argues that Defendant was not a party to it and therefore cannot invoke any protections it purportedly provides. Second, even if Defendant had been a Releasee, under the specific terms of the General Release, Plaintiff did not release potential claims for disability discrimination.

As an initial matter, in deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), "the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (internal quotation marks and citation omitted). The Court can consider "documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about . . . and relied upon, in bringing the suit." Tortomas v. Pall Corp., No. 18-CV-5098, 2020 WL 2933669, at *2 (E.D.N.Y. May 31, 2020). Here, Plaintiff does not contest the Court's ability to consider and interpret the General Release at the motion to dismiss stage, nor does he dispute signing it. Instead, he argues that the General Release cannot be invoked by Defendant. Alternatively, even if Defendant could invoke

it, by its terms, the General Release does not cover Plaintiff's discrimination claims.  The Court, therefore, will consider the General Release for purposes of the pending motion.

New York law treats a release as a contract.  When evaluating a contested release, a court will analyze it according to principles of contract law.  Accordingly, a release will be enforced if it is clear and unambiguous on its face, knowingly and voluntarily entered, and not the result of fraud, duress, or undue influence.  See Hummel v. AstraZeneca LP, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (citation omitted).  Here, the parties dispute the meaning of the word "subsidiaries" used in the provision of the General Release that lists the Releasees whom Plaintiff agreed to release.  While Plaintiff argues that Defendant is not a Releasee and therefore cannot invoke the General Release, Defendant claims that it is a subsidiary of Len Stoler, Inc.—one of the named Releasees—and therefore is released because of its alleged parent/subsidiary relationship with a named Releasee.

The General Release is silent regarding the meaning of the word "subsidiaries."  Therefore, the Court will look to the plain or ordinary meaning of the word.  In similar situations when other courts in this circuit have sought to interpret the plain meaning of a term in a settlement agreement, those courts have looked to the term's definition in Black's Law Dictionary.  See, e.g., Rothstein v. Am. Int'l Grp., Inc., 837 F.3d 195, 205-06 (2d Cir. 2016) ("The Settlement Agreements exclude from the settlement class 'any parent, subsidiary, affiliate, officer, or director of AIG' . . . The parties agree that the term 'affiliate' is not defined in the Settlement Agreements.  Like the district court, we begin by consulting Black's Law Dictionary."); Nat'l Union Fire Ins. Co. of Pittsburg v. Beelman Truck Co., 203 F. Supp. 3d 312, 319 (S.D.N.Y. 2016) (similarly consulting Black's Law Dictionary for the meaning of the word "affiliate" when a contract did not define the term).

5

The Court will do so here as well and apply the definition of "subsidiary" in Black's Law Dictionary: "[a] corporation in which a parent corporation has a controlling share." Subsidiary, Black's Law Dictionary (11th ed. 2019). Defendant admits that it does "not claim that Len Stoler, Inc. owns a controlling share of [Defendant]" and does "not claim that common ownership shares make [Defendant] a subsidiary of Len Stoler, Inc." (ECF No. 13 at 3.) Defendant therefore fails to meet the Black's Law Dictionary definition of "subsidiary" with respect to Len Stoler, Inc.

Defendant argues, however, that the Court need not look to its controlling shareholders, but should instead assess whether a parent/subsidiary relationship exists by looking to whether "domination and control of a corporation by another is so complete and obtrusive that the relationship between the two corporation[s] is legally defined as a parent/subsidiary relationship." (Id. at 3.) To support its alternative theory, Defendant cites a 1926 New York Court of Appeals case in which then-Judge Cardozo analyzed the level of domination and control between two entities to determine whether a parent railroad could be found liable in tort for an accident that occurred on the rail line of its subsidiary. See Berkey v. Third Ave. Ry. Co., 244 N.Y. 84, 87 (1926).

Defendant claims that, under Berkey, it is a subsidiary of Len Stoler, Inc. because both Defendant and Len Stoler, Inc. are owned by the same individuals, the entities share certain employees, and Len Stoler, Inc. makes certain decisions for Defendant and generates Defendant's financial statements, operating checks, and payroll. (ECF No. 11 at 6.) Berkey, however, did not articulate a clear definition of "subsidiary" under New York law and presupposed that a parent/subsidiary relationship already existed. Id. This case is inapposite to the instant situation as it concerned the standard for holding a parent liable for the acts of its subsidiary and did not establish a standard for determining whether a parent/subsidiary relationship exists. Accordingly,

6

the Court cannot find that Defendant is a "subsidiary" of Len Stoler, Inc. and therefore that Defendant is a Releasee able to invoke the protections of the General Release.[3]

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion is **DENIED**.

**SO ORDERED.**

Dated: January 19, 2021
      Central Islip, New York

                                                       /s/ (JMA)
                                                  JOAN M. AZRACK
                                                  UNITED STATES DISTRICT JUDGE

---

[3] Conceivably, Defendant may be an "agent" of Len Stoler, Inc. and therefore a Releasee. Defendant does not argue this point, and, in any event, the Court would be unable to make a determination at the motion to dismiss stage without a record developed through fact discovery.